IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOE L. HUNTER,

        Plaintiff,

vs.                                  Case No. 05-3344-JTM

WICHITA POLICE DEPARTMENT, et al.,

        Defendants.

MEMORANDUM AND ORDER

      This civil rights action is before the court on motions for summary judgment by both the plaintiff Joe Hunter (Dkt. No. 117) and by the defendants City of Wichita, Norman Williams, and Jeffery Taylor (Dkt. No. 125). Hunter alleges that on April 21, 2004 he was arrested without probable cause by Wichita police for attempting to use a stolen credit card at the A-OK Pawnshop located near the corner of Central Street and Ridge Road in Wichita, Kansas. He claims that the police failed to conduct a full investigation of the facts of the case and failed to consider exculpatory evidence. He claims that Wichita Police Officer Taylor used excessive force when making the initial arrest and then, when he fled, was shot four times by Officer Terence James. Hunter brings this case under 42 U.S.C. §1983 alleging Fourth, Eighth and Fourteenth Amendment violations for his arrest and alleged use of excessive force by Wichita Police Officers. He also advances a state law claim for the tort of battery. Officer James is not a defendant to this action.

      In addition to the summary judgment motions, defendants seek leave to file an exhibit — a video CD — conventionally (Dkt. No. 123). Plaintiff has moved for leave to amend his Rule 26 disclosures. (Dkt. No. 135). These motions are, with one exception, uncontested. Defendants object to that portion of Hunter's motion (Dkt. No. 135 at ¶ 6) where he seeks to add two expert witnesses. Defendants properly point out that the period for discovery has long since passed, and that the

plaintiff has failed to offer any rationale which would justify the designation of experts at this late date.  The motions are therefore granted with one exception: plaintiff's motion for leave to amend to add two expert witnesses is denied.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).  The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Hunter's memoranda in support of his motion for summary judgment (Dkt. No. 118) and in opposition to that of the defendants (Dkt. No. 130) fail to comply with Fed.R.Civ.Pr. 56 and D.Kan.R. 56. These rules govern the presentation of facts in summary judgment memoranda, and require that a party set forth such facts in short enumerated paragraphs, accompanied by citations to admissible evidence. Hunter's memoranda instead offer conclusory, unsworn assertions of fact scattered almost at random throughout his lengthy writings. The assertions are advanced free of any direct citation to admissible evidence, and are coupled with unsubstantiated suggestions that one or more of the witnesses against him is lying. The court has reviewed the statements of the officers and the pawn shop witnesses and no material discrepancies exist.

The A-OK Pawnshop operates stores at 7310 West Central and 410 N. West Street as well as at an east location, all in Wichita.

At around 1:30 p.m. April 20, 2004, a man entered the pawnshop on West Central. He had been seen getting out of a cream-colored four-door BMW. The man, who identified himself at first as Joe Hunter, got a loan of $100-$125 on a computer monitor. He also spoke with Gloria Birmingham, an employee, and told her that he wanted to buy a man's diamond ring. Hunter told Birmingham his name was John Richard Benoit, and that he wanted to put the purchase on MasterCard. Birmingham told Hunter that she would have to see a driver's license to verify his identification. Hunter said that his driver's license was out in his vehicle. He left the store and did not return that day.

Birmingham believed she had previously seen Hunter at the east A-OK store. She made a report to the Wichita Police Department substation, because she believed that the customer was attempting to buy the ring with a stolen credit card. She received a telephone call from Debra Moore, an employee of the west A-OK store, indicating that a check of approximately $600 from Joe Larry Hunter had come back for insufficient funds for a transaction at the east store. Hunter had also pawned a flat screen computer monitor at the West Street store. About this time, Birmingham

also saw a piece of paper at the counter at the A-OK Pawnshop on West Central asking employees to be on the lookout for Hunter.

Employees at the A-OK Pawnshop on West Central were advised to watch for Hunter if he came back

Hunter returned to the A-OK Pawnshop on West Central at about 1:30 p.m. on April 21, 2004. Four employees — Birmingham, Steve Steward, Bryan Davis, and Nick Sholander — all recognized him as the black male who had been in the pawnshop the day before. Davis told Birmingham to call 911. Birmingham called 911 to report that a person she believed was using a stolen credit card the day before and who did not return to the store when asked for identification was in the store at that time.

Officers Jeffrey Taylor and Terence James arrived five or six minutes later. The call went out as a forgery in progress involving some bad checks, a fake identification and some stolen credit cards.

When Taylor and James tried to arrest Hunter, he resisted being handcuffed, fought with and pushed the police officers and ran for the door. As the police approached Hunter, he asked several times what he had done wrong. According to Hunter, the officers would not say why they wanted him to put his hands behind his back, and they "grabbed him" around his body. According to both the police and pawn shop employees, Hunter threw something down to try to block the officers' way when they ran after him. Hunter pushed or shoved the officers and ran out of the store into the parking lot with the officers in pursuit.

The officers tried to stop Hunter from getting into his car and driving away, and struck him with their expandable batons. Hunter entered his car and started it. Officer Taylor dove into the driver's seat to get the keys out of the ignition to prevent Hunter from driving away. However, Taylor got stuck, and yelled to his partner that he could not get out of the vehicle. The car ran over his foot with the right front tire. Taylor yelled, "he's just ran (sic) over my foot and I still can't get out." (Def. Exh. K, at 5-6, 8).

4

Throughout this period, the officers were giving Hunter various commands including "stop," and "roll the window down." (Def. Exh. I at 11, 15).

Officer James grabbed the driver's side door trying to get Taylor out of the driver's side window. Several witnesses saw Hunter's vehicle dragging Officer Taylor as it backed out of the driveway, and thought the car would run over Taylor in the street after he fell out of the car. Taylor was in fear for his life and wondered how far on Central he would be dragged by Hunter's car.

After the car had run over Taylor's foot, James shot at Hunter. He had pulled his gun just before the vehicle started to go forward. James was about 5-6 feet away from the vehicle when he fired several shots. Taylor was able to get out of the vehicle and fell to the pavement on the ground next to the front tire. James shot twice or three times before the vehicle passed him, and two or three times afterward. He fired because he did not want Taylor to be dragged into the street by the car. He also did not know if the driver was attempting to run Taylor down again. He was trying to get the car stopped before he ran over Taylor.

Birmingham called 911 again when the car backed up. She went outside and was told that the officer's foot had been run over. Taylor's foot hurt "pretty bad," and EMS was called to give him medical attention.

Officers Taylor and James graduated from the Wichita-Sedgwick County Law Enforcement Training Center. The training academy has been annually certified by the Director of the Kansas Law Enforcement Training Center as satisfying the qualifications and standards promulgated by the Director and the Kansas Commission on Peace Officers' Standards and Training. Taylor had 760 hours of training and James had 864, which far exceeded the 560 hours necessary to be a commissioned officer under Kansas State Law. In addition, the officers completed eight to fourteen weeks of field training and are required to complete 40 hours of continuing education each year.

Hunter was interviewed in his hospital room at Via Christi-St. Francis Medical Center in Wichita, Kansas on April 21, 2004 at approximately 2:27 p.m. by Wichita Police Officer Robert K. Chisholm and Kansas Bureau of Investigation Agent Robert K. Jacobs. Hunter told them that he

probably went into the pawnshop the day before and pawned some "stuff." He was thinking of buying a ring for his girl, Amy. The following day, he went into the pawnshop to pawn a camera and something else. He said that the property was not his, and that an unknown black male at the Emley Apartments had given him the camera and a checkbook. Hunter said he would pawn them by signing a "slip" saying they were his property. Hunter said that he was pawning the items to help pay for his crack cocaine habit, and that he owed drug dealers a "hundred and twenty bucks" and wanted to make sure he had enough money to "get it out of the way". (Def. Exh. G, at 15-16, 25).

Hunter told Chisholm and Jacobs that he was "strung out" on drugs and had been smoking crack cocaine "heavy" for about a month and a half. He said he had smoked crack cocaine the day and night before and the morning of April 21, 2004, and that he quit smoking dope and drove straight to the pawnshop and did not stop to get anything to eat or go anywhere else.

Hunter knew the items were not his and probably did not belong to the man who had given them to him.

Hunter was arrested and charged with Obstructing Official Duty under K.S.A. 21-3808 and with Aggravated Battery on a Law Enforcement Officer under K.S.A. 21-3415(a)(3). He pled *nolo contendere* to both charges on September 28, 2004.

At the plea hearing on Case 04 CR 1045, a prosecutor with the Sedgwick County District Attorney's Office offered to the court what evidence the state would present at trial through the testimony of witnesses. The evidence included that Hunter fled from the officers when they attempted to arrest him in the A-OK Pawn Shop; that he was chased by the officers through the parking lot; that he attempted to get into his vehicle; that Hunter was struck by Officer Terence James with his service baton in an attempt to keep Hunter from getting into the car but Hunter was able to get into the car and get it started; that Officer Taylor wedged his body in the open driver's side window in an attempt to get the keys away or get the keys out of the ignition and could not get himself free; that Mr. Hunter turned the car on, put the car in reverse and began to back out of the parking lot while both officers were yelling orders for him to stop, get out of the car, and turn the car

6

off. As Hunter backed up, the front tire of the vehicle caught Officer Taylor and yanked him out of the window. One of the tires of the car ran over Officer Taylor and he was treated for injuries to his foot at Via Christi-St. Francis Medical Center. Hunter was given the opportunity to challenge or contest this version of the events at his sentencing hearing and declined.

Hunter was also charged with Giving A Worthless Check under K.S.A. 21-3707(a) for unlawfully making and delivering a check drawn on Emprise Bank in the amount of $664 on April 12, 2004 with the intent to defraud the A-OK Pawnshop. Hunter pled guilty to the charge on August 25, 2004.

The court will grant the defendants' motion for summary judgment. The court finds first that defendant Taylor is entitled to the defense of qualified immunity. *See Hunter v. Bryant*, 502 U.S. 224 (1991). Hunter has failed to demonstrate the existence of clearly established authority which would have prevented Taylor from arresting Hunter based upon the statements of the pawnshop employees.

Hunter stresses that he was never actually charged with *forgery*, and suggests this demonstrates a lack of probable cause to arrest him for that crime. But the omission of forgery or other theft charges must be understood in light of Hunter's contemporaneous plea to the far more serious charge of assaulting a police officer. In any event, the absence of criminal charges cannot by itself defeat qualified immunity, just as an acquittal of charges which are brought will not defeat the defense. *See Harris v. Evans*, 795 F. Supp. 1060, 1063-1064 (D. Kan. 1992) (officers entitled to qualified immunity even if criminal charges were never brought against the plaintiff); *Newell v. City of Salina*, 2004 U.S. Dist. LEXIS 6525; 02-4101 (D. Kan. 2004) (acquittal does not demonstrate the lack of probable cause at the time the arrest was made).

Under *Anderson v. Creighton*, 483 U.S. 635 (1987) and *Saucier v. Katz*, 533 U.S. 194 (2001), the court, faced with an assertion of qualified immunity, must answer two questions. First, did the government officer's conduct violate constitutional standards? Second, was the right established in

a particularized sense so as to give the officer reasonable notice that her conduct was illegal? The court proceeds to the second question only if it determines that the answer to the first is "yes."

Although Hunter has contended that he was deprived of his Eighth and Fourteenth Amendment rights as a result of excessive force during his stop and arrest, it is well-settled that claims of unnecessary or excessive force during an arrest are to be analyzed under the standards of the Fourth Amendment's "objective reasonableness standard," rather than substantive due process principles under the Fourteenth Amendment. *Graham v. Conner*, 490 U.S. 388, 394, 109 S. Ct. 1865 (1989); *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151 (2001). Similarly, the Eighth Amendment's protections against cruel and unusual punishment do not apply prior to an arrestee's conviction. *Weimer v. Schraeder*, 952 F.2d 336 (10th Cir. 1991).

Nor were the plaintiff's Fourth Amendment rights violated since the officers had probable cause for an arrest. Probable cause exists where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

In the present case, the officers at the scene had a phone report from the employees of the pawnshop stating that a customer resembling Hunter had been in the store the day before using more than one name to conduct a transaction. When asked for identification, he had left the pawnshop in a vehicle that was similar or identical to Hunter's. The store employees had also received information of a bad check passed by Hunter. When Hunter returned to the store the next day, several employees identified him as the customer from the day before. The officers had no reason to be skeptical of the statements of the pawn shop employees. *Cf. Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000) (police may arrest based upon the complaint of a victim or nonvictim witness, without investigating the truthfulness of the complaint, unless the officers have reason to believe the complaint may be without merit). *See Reed v. Simmons*, 2004 U.S. Dist. LEXIS 7770; 01-3205 (D. Kan. 2004). The police here had no reason to believe that the pawn shop witnesses were not giving

reasonable, truth-worthy information about Hunter. Indeed, the information on the bad check at the other store was true, and Hunter later admitted to police that the goods brought into the pawnshop on April 21 were not his. Officers Taylor and James had sufficient probable cause to arrest Hunter.

Hunter complains that the officers should have conducted a more complete investigation. But, having probable cause, the officers were not required to exhaustively investigate the case in an effort to discover the ultimate truth of the case. *See Romero v. Fay*, 45 F.3d 1472 (10th Cir 1995). And in any event, Hunter himself prevented a more complete investigation by fleeing the scene. Finally, even if a full investigation had been conducted, the result would have merely confirmed the presence of criminal activity: Hunter was trying to pawn goods which he did not own, and had passed a bad check the previous day at one of the pawnshop's other locations. The City of Wichita prohibits any person from attempting to pawn goods owned by another. Criminal Code of the City of Wichita, Section 99.02.192 Charter Ord. 192. And, as noted earlier, Hunter eventually pled guilty to the offense of Giving A Worthless Check, which would have provided additional probable cause for Hunter's arrest.

The court also finds that Hunter has failed to demonstrate that the use of force against him was excessive. Instead, the court finds that the use of force was appropriate and reasonable. The only force initially used by the officers was that inherent in handcuffing a suspect. All of the pawnshop witnesses agree that Hunter initiated the violence. A review of the pawnshop's videotape of the incident (Def. Exh. P) confirms both the reasonableness of the officers' actions and the forcible resistance by Hunter. The officers' use of force in the store was reasonable. Outside the store, the use of force was reasonable given the apparent risk of serious physical harm caused by Hunter's flight in the car while dragging a police officer.

Because Officer James had a subjective and objectively reasonable belief that his acts were necessary to protect Officer Taylor, there was no battery. *Wilson v. Meeks*, 98 F. 3d 1247, 1253 (10th Cir. 1996); K.S.A. 21-3211. Hunter has failed to point to any authority holding the use of potentially deadly force improper under similar circumstances. Hunter did not contest the criminal

9

charge of Aggravated Battery of a Law Enforcement Officer under K.S.A. 21-3515(a)(3), and is precluded from denying the factual statement of his crime presented in that prosecution. *Jiron v. City of Lakewood*, 392 F.3d 410 (10th Cir. 2004).

As noted earlier, in his state prosecution Hunter presented no objection to the prosecutor's statement of the case. Specifically, that Hunter had fled from the officers when they attempted to arrest him in the A-OK Pawn Shop; that he was chased by the officers through the parking lot; that he attempted to get into his vehicle; that Hunter was struck by Officer James with his service baton in an attempt to keep Hunter from getting into the car, but Hunter was able to get into the car and get it started; that Officer Taylor wedged his body in the open driver's side window in an attempt to get the keys away or get the keys out of the ignition and could not get himself free; that Hunter turned the car on, put the car in reverse and began to back out of the parking lot while both officers were yelling orders for him to stop, get out of the car, turn the car off. As Hunter backed up, the front tire of the vehicle caught Officer Taylor and yanked him out of the window and officer Taylor was run over by one of the tires of the car and was treated for injuries to his foot at Via Christi-St. Francis Medical Center. The use of potentially deadly force by Officer James was appropriate under the circumstances.

Further, the court notes that Officer Terence James is not a defendant here. Of the officers present at the scene, Hunter has sued only Officer Taylor. Taylor was not James's supervisor nor did he create any policy or procedure which James was required to follow. Taylor cannot be vicariously liable for the constitutional violations of another person. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

The court will also grant summary judgment to the defendants City of Wichita and Police Chief Norman Williams. The doctrine of respondeat superior in and of itself will not provide plaintiff a basis for liability against municipalities. *Board of County Com'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Instead, the plaintiff must show that the municipality itself somehow caused the violation. *City of Canton v. Harris*, 489 U.S. 378, 385, (1989). The court

finds that the City and Chief Williams are entitled to summary judgment because Hunter has failed to demonstrate either that the training of Officers Taylor and James was inadequate, that the officers exceeded constitutional limitations on the use of force, or that the lack of adequate training shows a deliberate indifference on the part of defendants toward persons with whom the police officers come into contact. *See Carr v. Castle*, 337 F.3d 1221, 1128 (10th Cir. 2003); *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000).

The court will also deny Hunter's request for injunctive relief, such as his request that the defendants make a televised apology. Hunter has not shown that his remedy at law would be inadequate. He has also failed to show any likelihood of prospective harm in the absence of injunctive relief. The request for injunctive relief is denied.

IT IS ACCORDINGLY ORDERED this 16th day of November, 2006, that the defendants' Motion for Summary Judgment (Dkt. No. 125) is granted; that of the plaintiff (Dkt. No. 117) is denied. Plaintiff's motion to amend his Rule 26 disclosures (Dkt. No. 135) is granted in part and denied in part as provided herein. Defendants' motion for leave to file exhibit conventionally (Dkt. No. 123) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE